Lillian Boehm v. Commissioner.
Boehm v. Commissioner
Docket No. 111621.
United States Tax Court
1943 Tax Ct. Memo LEXIS 69; 2 T.C.M. (CCH) 954; T.C.M. (RIA) 43467; October 23, 1943
*69 Petitioner's stock in The Hartman Corporation became worthless prior to 1937 and, therefore, deduction therefor is not allowed in that year. Louis Boehm, Esq., 60 Broad St., New York, N. Y., for the petitioner. P. J. Cavanaugh, Esq., for the respondent. VAN FOSSAN Memorandum Finding of Fact and Opinion The Commissioner determined deficiencies in the amount of $125.63 and $7,537.46 in the petitioner's income tax for the years 1936 and 1937, respectively. All the issues with reference to the 1936 deficiency and certain of those concerned with that of 1937 have been conceded or abandoned by the parties, and effect will be given thereto in the computation under Rule 50. The following issues are presented for the year 1937: (1) Whether the petitioner's stock in The Hartman Corporation became worthless in 1937. (2) Whether the respondent properly included in her gross income for 1937 the sum of $12,500 received by the petitioner in dismissing a stockholder's suit. Findings of Fact The facts were stipulated and as so stipulated are adopted as findings of fact. In so far as material to the issues presented, the facts are as follows: The petitioner, a married woman, resides in New *70 York, N. Y. She filed her separate income tax return for the year 1937 with the collector of internal revenue for the third district of New York. In 1929 the petitioner purchased 1,100 shares of the Class A stock of The Hartman Corporation, hereinafter called Hartman (Virginia), for $32,440. Hartman (Virginia) was incorporated in 1916 in the State of Virginia to acquire the capital stock of the Hartman Furniture and Carpet Company, hereinafter referred to as Hartman (Illinois), and its affiliates. Hartman (Illinois) and its affiliates were engaged in the business of selling furniture, carpets, and household goods. In June 1932, Martin L. Straus and Elias Mayer were appointed equity receivers for Hartman (Virginia) by the District Court of the United States for the Northern District of Illinois, Eastern Division. The receivers entered into possession of the property of Hartman (Virginia)and continued its business of buying and selling furniture and other household articles from the time of their appointment until on or about May 26, 1933. The petitioner received a letter from Hartman (Virginia) enclosing its balance sheet of December 31, 1931, which showed assets and liabilities *71 of $15,401,097.97 with a total net worth of $9,410,659.50. Accompanying the balance sheet was a statement of the board of directors dated April 4, 1932 addressed to the stockholders, setting forth the policy and procedure of the corporation due to the business depression and stressing the reduction of loans payable and of operating costs. On May 4, 1932, Martin L. Straus, president of Hartman (Virginia), sent another letter to the stockholders stating that business had not shown any improvement and outlining the measures being taken to counteract the existing business conditions. In 1933 a new corpoation called Hartman's, Inc., was organized under the laws of the State of Delaware. As of May 26, 1933 Hartman's, Inc. purchased at a bankruptcy sale the assets of Hartman (Illinois), the wholly-owned subsidiary of Hartman (Virginia), for the sum of $501,000 in cash and an agreement to procure a waiver of certain inter-company claims against the bankrupt estate. The stock of the new company was issued to the creditors of Hartman (Illinois) in settlement of claims, and to the stockholders of Hartman (Virginia) by subscription thereto. The stockholders of Hartman (Virginia) were given the *72 right to subscribe for debentures and capital stock of Hartman's, Inc. The petitioner did not exercise the right of subscribing to the debentures and stock of Hartman's, Inc. and did not acquire any interest in that company in 1933 or thereafter. On August 10, 1934, the receivers of Hartman (Virginia) filed a report with the court listing as assets $39,593.13 in cash and a suit pending against the directors (the Graham suit) and as liabilities total outstanding claims amounting to $707,430.67. The receivers recommended that claims totaling $630,574.57 be allowed. By an order dated August 10, 1934, the court approved the report and also awarded $3,500 as compensation to each of the receivers and $5,000 as attorneys' fees. The receivers filed a second report on July 11, 1935, listing as assets $27,192.51 in cash and the Graham suit pending against the directors and as liabilities the same amount of $707,430.67, representing the total outstanding claims. The receivers recommended that a dividend of 4 per cent be paid on the claims of $630,574.57 allowed and that one claim amounting to $176,856.10 be disallowed. By an order dated the same day the court adopted the report and *73 recommendations of the receivers. On August 26, 1935, one of the two receivers was released from further duties. The remaining receiver filed a final report with the court on September 30, 1937. The sole remaining asset was cash in the amount of $1,909.94. Claims totaled $630,574.57. It was recommended that compensation $900totaling be allowed the receiver and counsel, and the remainder be distributed to the creditors. The court adopted the recommendations and discharged the receiver by an order dated Sptember 30, 1937. A suit against the directors, hereinafter called the Graham suit, was instituted on December 16, 1932 in the Supreme Court of the State of New York. The petitioner and eight other stockholders of Hartman (Virginia) were plaintiffs. The defendants were the corporation, Hartman (Virginia), and nine members of the company's board of directors, all of whom were financially responsible and several of whom were prominent business men. The plaintiffs brought the suit "on behalf of themselves as stockholders of The Hartman Corporation and on behalf of the said Company and all other stockholders of said Company similarly situated, who may join with the plaintiffs-in, *74 and contribute to the expenses of this suit." The complaint set forth the plaintiffs' respective holdings of the capital stock of Hartman (Virginia), [1] its corporate existence and purposes, the number of shares outstanding of Class A and Class B stocks, and alleged the facts that Class A was preferred over Class B as to dividends; that the individual defendants were elected to the board of directors in 1929 and thereafter (excepting two who acted until April 26, 1932); and that certain individual defendants were the officers of the company from 1929 and thereafter (excepting the two who served until April 26, 1932). The plaintiffs then charged the defendants with waste, extravagance, mismanagement, neglect, and the fraudulent violation of their duties as officers and directors of the corporation and demanded that the defendants render an accounting and pay into the treasury of the corporation the amount of the loss and damage sustained by it by reason of their wrongful acts. The complaint charged the defendants with issuing false letters, statements *75 and reports to the stockholders relating to the assets, liabilities and financial condition of the corporation and with concealing the true state and condition of the corporation from the stockholders, including the plaintiffs. The complaint concluded with the following demand for judgment: 1. That the defendants and each of them, except The Hartman Corporation, be directed to account to the defendant Corporation for their official conduct as officers and/or directors thereof, as the case may be, in the management and disposition of the property and affairs of the said Corporation, and in respect to all of the matters set forth in this complaint; 2. That the liability of the defendants and each of them, be ascertained and determined, and that they be adjudged and decreed to pay into the Treasury of the defendant Corporation the amount of the loss and damage which shall be found to have been sustained by the Corporation by reason of their aforesaid wrongful acts and conduct; 3. That this Court make and award suitable allowance to the plaintiffs for counsel fees and other necessary disbursements incurred in the prosecution of this action on behalf of the defendant Corporation and *76 stockholders, and that it be decreed that the defendant Corporation pay the same to the plaintiffs, and that the plaintiffs have judgment therefor, together with the costs and taxable disbursements of this action. 4. That the plaintiffs have such other and further relief as may be just, equitable, and proper. During the years 1933 to 1936, inclusive, extensive examinations were made of certain of the defendants. Many hundreds of pages of testimony were taken and numerous exhibits were offered in evidence. Pursuant to an order of the New York Supreme Court the petitioner and her co-plaintiffs paid expenses and counsel fees of certain of the defendants' attorneys amounting to approximately $800. The plaintiffs in the Graham suit expended approximately $2,000, exclusive of fees, in defraying expenses of their counsel while attending the examinations, in stenographic costs and printing charges. At the conclusion of the examinations and shortly before the trial, negotiations were commenced for a settlement of the action and on February 20, 1937 such settlement was consummated. Under its terms the defendant directors paid the petitioner and the other plaintiff stockholders the sum *77 of $50,000 in full settlement and discharge of the claims and cause of action of the petitioner and her co-plaintiffs. In connection with the settlement the petitioner and the other stockholders released all their rights and claims arising out of the acts committed by the defendants as alleged in the complaint. The suit was dismissed on May 14, 1937. At the time of the settlement the assets of Hartman (Virginia) consisted of $1,909.94 in cash and the Graham suit and its liabilities amounted to $630,574.57, representing the claims allowed by the court. The petitioner's proportionate share of the $50,000, after payment of counsel fees and expenses, amounted to $12,500. In her income tax return for 1937 she claimed a deduction from gross income in the amount of $19,940 as a loss due to the worthlessness of her Hartman (Virginia) stock. The respondent denied the deduction and included in her gross income for that year the sum of $12,500 which she received pursuant to the settlement. The petitioner claimed a deduction from gross income in her 1934 income tax return in the amount of $32,302 as a loss due to the worthlessness of the 1,100 shares of Class A Hartman (Virginia) stock. *78 The deduction was denied by the Commissioner on the ground that her stock did not become worthless in the year 1934. The petitioner at no time received any deduction from her gross income in the determination of her income tax liability by reason of her investment in Hartman (Virginia) stock. We further find that the petitioner's stock in Hartman (Virginia) did not become worthless in 1937. Opinion VAN FOSSAN, Judge: The first issue presents the question of when the petitioner's stock in Hartman (Virginia) became worthless. The petitioner contends that the identifiable event which determined the fact and the extent of her loss due to the worthlessness of the stock was the negotiated settlement of the Graham suit in 1937, and argues that before that occurrence she had no means of ascertaining what, if any, her loss would be. We are of the opinion that petitioner can not be sustained on this issue. Not only is the evidence insufficient to establish that the stock had any value at the beginning of 1937 and became worthless during that year, it clearly shows that the stock was worthless prior to that year. The financial history of the company, including the receivership in 1932, *79 the report of August 10, 1934, showing the only assets to be some $39,000 in cash and the Graham suit, against outstanding claims of some $707,000 and the second report in 1935 showing less cash with the same outstanding claims demonstrate the hopeless condition of the corporation. We have no evidence on which to base a conclusion that the Graham suit was an asset of any substantial value. We know nothing of the merits of the suit, the probability of recovery, the assurance of the collection of a judgment, or other essential factors. The stipulated fact that the defendants were men of financial responsibility is not sufficient to establish the collectibility of a recovery equal to the outstanding claims. These claims aggregated more than half a million dollars and had to be satisfied before there would be anything for the stockholders. In our opinion, all value had gone from the stock prior to 1937. We sustain respondent in his disallowance of the claimed loss. The second issue presents the question whether the payment of $12,500 was income to petitioner. According to the stipulated facts the complaining stockholders were paid $50,000 "in full settlement and discharge of *80 the claims and cause of action of petitioner and the plaintiff stockholders as set forth in the complaint." How the sum was arrived at we do not know. Apparently it was a negotiated lump-sum settlement. Whether the defendants merely "brought their peace" we can only conjecture. It is noted that the payment did not go through the corporate treasury although the prayer of the complaint specifically asked that the defendants "be adjudged and decreed to pay into the treasury." The reason is obvious. If a judgment had been entered and payment had been made into the corporate treasury, the proceeds would have been applied first to the creditors' claims and nothing would have remained for the stockholders. On the record we are unable categorically to catalog and characterize the payment. We can not determine whether it was replacement of capital, restoration of lost profits, compensation for damages suffered, nuisance value, or some other type of payment. In this situation we have no alternative to holding that petitioner, on whom rested the burden of proof, has not proven that the item was not income. Decision will be entered under Rule 50.
Footnotes
1. Each of the plaintiffs owned a block of Class A stock. A plaintiff other than the petitioner also owned a block of Class B stock.↩